**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.     1:19-CV-03667-RBJ

SYLVIA SIMPSON,
Plaintiff,

v.

CITY OF FOUNTAIN, COLORADO,
Defendant.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The City of Fountain ("City"), by and through Nathan Dumm & Mayer P.C., hereby submits its Reply in Support of its Motion for Summary Judgment [ECF 28]:

A.     *Reply Regarding Plaintiff (Plf's) Statement of Facts[1]*

First, Plf did not respond to each of the specific, numbered paragraphs in the City's Motion, of which nearly all relied in whole or at least in part, on Plf's own testimony. The way Plf discusses the alleged material facts appears to have been orchestrated for the purpose of hiding some pertinent factual admissions and to try to create a dispute of fact where none exists.

Second, as set forth in the Motion to Strike filed herewith, Plf relies almost exclusively on a sham affidavit and an unauthenticated alleged transcript, neither of which are competent evidence, as is outlined with supporting legal authority in the City's Motion to Strike. Consequently, the Court should focus its review on the parties' citations to competent, supported evidence, which show no dispute of material fact and that summary judgment is warranted.

---

[1] For purposes of this briefing only, the City continues to accept those material facts alleged by Plf which are supported by competent evidence, although such facts may be hotly contested if this case proceeds to trial.

Third, even if the Court were to consider Plf's alleged facts, summary judgment is appropriate as Plf has made several dispositive admissions, including: (1) Plf was retained after her unsuccessful lawsuit, and even promoted, given positive evaluations and salary increases by the same person she now claims was discriminatory/retaliatory (Mr. Trainor) (ECF 29, p. 3); (2) Plf's employment was at-will (*Id.* at 3); (3) the investigation was initiated because of complaints by a Hispanic female against Plf (*Id.*); (4) an independent investigator conducted the investigation and misconduct confirmed (*Id.* at 3-4); (5) Plf used the word "vagina" in a derogatory manner when referring to male officers (*Id.* at 4; ECF 29-2, p. 2); (6) the Personnel Board's thoughts are found in Ex. F and speak for themselves; and (7) Plf inappropriately discussed race and color in the work place with other employees (ECF 29-2, p. 3).

Fourth, for the above reasons, the City will not waste space going line by line through Plf's improperly asserted facts[2]. Instead, the City will focus on the more egregious misstatements or unsupported factual allegations, as follows:

- Plf alleges she was retained as an employee after her unsuccessful lawsuit to avoid retaliation, yet provides no evidence in support this contention. [ECF 29, p. 3].
- Plf contends she was paid less, but fails to establish she was similarly situated (same education, experience, job duties, supervision, etc.), and then inconsistently notes the position was "scaled back" and the scope of her duties reduced, which supports lower pay and confirms she was not similarly situated to the employees referenced.[3] Regardless, Plf accepted the promotion and negotiated her pay in 2015, has never asserted a claim associated

---

[2] Even still, given the lack of numbered paragraphs it would be difficult to effectively respond to Plf's Statement.
[3] Even though the City could prove Plf's assertion regarding her compensation is false, for the reasons stated it is unnecessary to even get to that point.

- with her compensation, and even if she had, any such claim would be time barred.  [*Id.;* ECF 29-2, p. 2; Mtn ¶7].  Accordingly, this allegation is not material to the issues presented.

- Plf's descriptions of the independent Personnel Board ("Board") memo are incorrect. [ECF 29, p. 5].  The Board did not find the investigation was "predicated by an adverse evaluation".[4]  [Ex. F, ¶5].  It also did not indicate the events occurred one to five years ago or that discipline went beyond that of white males[5].  [Ex. F]. Plf also completely ignores that the Board specifically rejected there was discrimination or retaliation against Plf. [*id*. at ¶12].

- On pages 5-6 of her Response, Plf describes Mr. Trainor as encouraging racial insensitivity and she implies a pattern of such behavior.  However, in her deposition, Plf was clear that Mr. Trainor laughed one time at a remark years earlier (which would be time barred for a claim) and could not identify any other situations of such behavior, which belies encouragement or a pattern of racial insensitivity.  [Ex. A, 65:15-66:4, 93:19-94:4].

- Plf's claims on pages 6-7 of her Response regarding her current employment are not addressed in her sham affidavit and, thus, are wholly unsupported.

- Plf's allegations on pages 5-6 and 11 about male employees are belied by her own testimony, which established that she had no actual knowledge of others and no events were similarly situated.  [Ex. A, 69:19-70:13, 77:7-12, 117:14-118:11; Ex. L, 66:19-67:3,77:21-78:4].[6]

### B.     *Plf cannot establish disparate impact under Title VII*[7]

---

[4] While Plf cites to the wrong paragraph, even in the correct one, the Board only noted the proximity of two events as a result of allegations Plf made. [Ex. F, ¶5]. As shown on the evaluation the complainant received an "average" rating, which can hardly be considered adverse, and was one of two Hispanic female complainants. The other complainant raised no concerns. [Ex. A, 106:20-107:14; Ex. C; Ex. K (Evaluation)].
[5] Besides her misstatements, Plf is inconsistent in that she relies on and is critical of the Board at the same time.
[6] Courts have "refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotations omitted).

If the Court considers Plf's newly minted disparate impact theory, that theory nevertheless also fails as a matter of law. To survive summary judgment, Plf must prevail on a three part burden shifting analysis. First, and most importantly, Plf must establish a *prima facie* case that (a) an employment practice; (b) caused a significant disparate impact on a protected group. *Gallegos v. Los Alamos Cty. Fire Dep't*, No. 00-2259, 2000 U.S. App. LEXIS 33188, at *4 (10th Cir. Dec. 19, 2000).[8] The employment practice and/or policy challenged and the alleged protected group must be identified with specificity. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006). "In assessing whether a plaintiff has established a prima facie case, it is, of course, irrelevant what happens to those who do not qualify for consideration." *Id.* Moreover, establishing a prima facie case of disparate impact "is more rigorous than in a disparate treatment case because a plaintiff must not merely show circumstances raising an inference of discriminatory impact but must demonstrate the discriminatory impact at issue." *Gallegos*, 2000 U.S. App. LEXIS 33188 at *4.

In evaluating this theory, Plf's sole argument is an alleged failure to equally enforce the policies in the City's handbook. Plf, though, fails to identify with specificity on which provisions she relies, and only argues in a conclusory and general manner that the City's Employment Handbook creates a disparate impact. Moreover, Plf ignores the plain language of

---

[7] Plf appears to be trying to morph her theory of relief from one of termination based upon discriminatory treatment to one of disparate impact, presumably because of the lack of support for a discriminatory treatment theory. Because Plf fails to respond to any of the discrimination analysis in the City's Motion, summary judgment should be granted as to any discriminatory treatment based claims (First, Second and Third claims). *Jones v. Rent-A-Center, Inc.*, 240 F.Supp.2d 1167, 1175 (D. Kan. 2002) (finding plaintiff's failure to respond to defendant's arguments in response to motion for summary judgment constituted an abandonment of such claims); s*ee also Muhlberg v. Sprint Corp.*, 2008 US. Dist. LEXIS 17334, n.1 (D. Kan. March 5, 2008) (stating that omitting any argument in response to motion for summary judgment constitutes waiver of claim). As to Plf's seemingly revised theory, this Court has discretion to exclude new arguments made for first time in response to a motion for summary judgment. *Bruner v. Baker*, 506 F.3d 1021, 1023 (10th Cir. 2007); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1153 (10th Cir. 2005).
[8] Plf's Response is completely devoid of any case law regarding this claim, presumably because it is not supportive.

the Handbook, which provides that the discipline imposed is that which the City Manager, Human Resources Manager and Department Head deem appropriate "under the circumstances." The Handbook expressly provides for the discretion of these supervisors, and confirms there is no uniform discipline requirement or right to progressive discipline. [Ex. M, §5.2a]. Between the policy language and Plf's at-will employment, the City is not required to follow any specific disciplinary path nor discipline two employees identically when the circumstances are not identical in all relevant respects. *See Carpenter*, 456 F.3d at 1194-96 (discussing discretionary employment practices, and that it is a plaintiff's burden to establish by statistical evidence or otherwise that such discretionary practices create a disparate impact).

Further, Plf admittedly has no firsthand knowledge of the male employee's situations on which she relies, and could not identify any employees who were identically situated during her deposition. Plf also specifically admitted there was no City employee she was aware of who referred to the anatomy of the opposite sex in a derogatory manner at work like she admittedly had, thereby confirming there are no similarly situated individuals who were treated differently. [Ex. A, 69:19-70:13, 77:7-12, 117:14-118:11; Ex. L, 66:19-67:3, 77:21-78:4]. As courts do not second guess the business judgment of an employer or ask "whether the employer's decision was wise, fair or correct," *Rolland v. Carnation Bldg. Servs.*, 739 Fed. Appx. 920, 922 (10th Cir. 2018) (quoting *Dewitt v. Sw Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017)), the mere existence of disciplinary policies that require discretionary assessments cannot in and of themselves create a disparate impact. As such, the inquiry should end there.

Even if the Court considered this further, Plf has not and cannot demonstrate there has been a "significant disparate impact on a protected group". *Gallegos*, 2000 U.S. App. LEXIS

33188, at *4.  This prong is "more rigorous than in a disparate treatment case because a plaintiff must not merely show circumstances raising an inference of discriminatory impact but must demonstrate the discriminatory impact at issue."  *Id.* To satisfy this requirement, Plf must establish the actual protected class impacted and show, typically by statistical evidence involving appropriate comparables, a significant and disproportionate number of employees in Plf's alleged protected status were terminated.  *Id.*  Plf has to establish that fact via "a threshold of reliability". *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1243 (10th Cir. 1991).  Plf also has to show the disparate effect on a group of individuals was caused by the challenged policy and not other causal factors. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012). Where there is a lack of evidence to support this prong, summary judgment is appropriate. *Vazirabadi v. Denver Pub. Sch.*, 2019 U.S. Dist. LEXIS 106014, at *57-58 (D. Colo. June 25, 2019) (aff'd Vazirabadi v. Denver Pub. Sch., 820 F. Appx. 805 (10th Cir. 2020)).

Here, Plf has only asserted allegations pertaining to her employment, has not alleged any other group of employees was negatively impacted because of a certain protected status, and she has not even identified which specific status was the subject of disparate impact[9].  These failures also warrant summary judgment.[10] Plf also has provided no evidence as to any of the other requirements, such as competent evidence of appropriate comparables and a significant, disproportionate impact on a specific protected status. Rather, Plf's own testimony as cited above confirms the vague and unsupported assertions in her sham affidavit are unreliable and

---

[9] Given that Plf has asserted three separate Title VII statuses it is not even clear whether it is her national origin, color or gender at issue or some combination of those statuses.

[10] The fact that Plf falls into a protected class is not enough under a disparate impact theory. *Campbell v. Sandoz Pharm. Corp.,* No. 96-1638, 1997 U.S. App. LEXIS 19264, at *1 (4th Cir. July 28, 1997).

improperly made. Plf has thus not satisfied either required element and summary judgment should be granted.

Even if Plf satisfied the *prima facie* test, which she cannot, the burden would then shift to the City to show the rationale for its action. All the City needs to show is that the practice serves the "legitimate employment goals of the employer." *Ortega,* 943 F.2d at 1244. Making case by case, fact specific employment decisions to ensure the appropriate discipline is rendered based upon the specific facts at issue is a legitimate goal. This is why courts typically do not second guess legitimate employment decisions. *See Bardales v. Western Tone & Metal*, 2007 U.S. Dist. LEXIS 26453, *14 (D. Colo. Apr. 10, 2007) (finding "it is not the role of this court to second-guess the priorities of an employer in determining whether misconduct merits discipline."). In light of the undisputed evidence showing Plf's serious misconduct, which Plf cannot deny, termination of her employment, as recommended by multiple individuals, including those not alleged to be biased, was legitimate, appropriate and not discriminatory.

In conclusion, Plf's newly formed disparate impact theory fails, and summary judgment should be granted as to her First, Second and Third claims.

### C.   *Plf has Shown no Causal Connection as Required for her Retaliation Claim[11]*

Plf's assertions starting on page 15 of her Response are either not supported by competent evidence, or in certain instances any evidence at all, or they actually belie her claim.

---

[11] Other than her termination, Plf has not established any other adverse employment action is at issue. Plf appears to acknowledge as much on pages 14-15 of ECF 29. Thus, Plf's reference to the court's budget, of which she admittedly had certain control, and attendance at meetings is irrelevant, as these events have not been shown to constitute adverse employment actions. *See Wheeler v. Bnsf Ry. Co.*, 2010 U.S. Dist. LEXIS 164008, at *16 (D. Kan. June 4, 2010) (stating an adverse employment that gives rise to discrimination must be an ultimate employment decision), *see also Tapia v. City of Albuquerque*, 170 Fed. Appx. 529, 533 (10th Cir. 2006) (unpublished) ("mere inconvenience or an alteration of job responsibilities will not suffice.")[Ex. N].

Regardless, as discussed in the City's Motion, Plf has not and cannot show the requisite temporal proximity nor a direct link, between any protected act and the alleged adverse employment action, which is needed to prove a causal connection. Moreover, Plf does not dispute she violated City policy. Given Plf's policy violations and established misconduct, the undisputed positive employment actions Mr. Trainor took with respect to Plf's employment between 2012 and 2018 and thus the same actor doctrine, and that multiple indisputably unbiased individuals[12] supported Plf's termination, the weight of the evidence proves the City had legitimate reasons for its actions. Consequently, Plf's retaliation claim fails.

As for Plf's reference on page 16 of ECF 29 to "discrimination based on retaliation against City based on disparate impact", it is unclear what Plf means—if she means the City's decisions with respect to other employees' discipline in different situations establishes pretext in this case, she is incorrect. *See Locke v. Grady Cnty*, 437 Fed. Appx. 626, 630 (10th Cir. 2011) (discussing that not only do courts not second guess employer disciplinary decisions, but that to prove pretext based on an employer's policies and practices statistical data and/or evidence proving disturbing irregularities is necessary). As Plf cannot establish the elements necessary to prove her retaliation claim, and her discriminatory impact theory is unsupported and baseless, as set forth in detail above, this claim fails as a matter of law.

As a result, summary judgment should be granted as to Plf's Fourth claim.

---

[12] The independent investigator, City Attorney (Plf's last direct supervisor), Human Resources Director and the entire City Council all supported Plf's termination, and none were allegedly biased or the subject of complaints for which there would be a claim of retaliation. [Ex. G; Ex. A, 60:24-61:9, 199:3-200:4, 200:5-12].

### D.     Plf's ADA Assertions are Conclusory at Best

Strangely, even though the City did not dispute the first prong of the *prima facie* ADA test[13], Plf wastes nearly half of her analysis on that subject. [ECF 29, p. 17]. She then goes on at the bottom of page 17 to contend her failure to request and/or obtain the same requested accommodations from her new employer is justified because the positions are significantly different. However, the testimony Plf cites does not support that contention, and in fact, her own affidavit cited and prepared solely for purposes of trying to create a dispute of fact at summary judgment does not even discuss the issue, thereby making all of Plf's alleged "direct evidence" wholly irrelevant and unsupported.

Plf's only other argument is that her migraines make her cranky. Even if true, that does not create a valid ADA claim. Plf's employment was terminated for more than being cranky to someone. It was terminated because Plf engaged in serious misconduct on multiple occasions, including admittedly using the word "vagina" at work to refer in a derogatory manner to male officers and inappropriately discussing race/color/national origin, sometimes in a disparaging way, at work with other employees, including her subordinates. In fact, even Plf's own sham affidavit confirms her misconduct. [ECF 29-2, pp. 2-4]. Given these admissions and the undisputed evidence, Plf's employment was reasonably terminated because of her own misconduct and policy violations, which prevents her from establishing prongs two or three of the required *prima facie* ADA test and provides clear non-discriminatory reasons for the action taken.

In conclusion, summary judgment should be granted as to Plf's Fifth claim.

---

[13] The City did not dispute prong one for purposes of this briefing only.

**WHEREFORE**, for the reasons set forth above and in ECF 28, the City respectfully continues to request summary judgment as to all of Plf's claims, an award of its costs, and that this Court award such other and further relief as it deems appropriate.

Respectfully submitted this  22nd day of January, 2021.

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Ashley Hernandez-Schlagel
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number:  (303) 691-3737
Facsimile:  (303) 757-5106
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd  day of January, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

Daniel L. Chandler
The Kanthaka Group
1465 N. Union Blvd. Suite 100
Colorado Springs, CO 80909
dchandler@kanthakagroup.com
*Attorney for Plaintiff Sylvia Simpson*

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Ashley Hernandez-Schlagel
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number:  (303) 691-3737
Facsimile:  (303) 757-5106
*Attorney for Defendant*